**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(NORTHERN DIVISION)**

| | | |
|---|---|---|
| **JUST PUPPIES, INC.** | * | |
| **d/b/a JUST PUPPIES TOWSON** | | |
| **1028B York Road** | * | |
| **Towson, MD 21204** | | |
| **[Baltimore County, Maryland]** | * | |
| | | |
| **and** | * | |
| | | |
| **JUST PUPPIES OF MARYLAND, INC.** | * | |
| **d/b/a JUST PUPPIES ROCKVILLE** | | |
| **2004 Veirs Mill Road** | * | |
| **Rockville, MD 20851** | | |
| **[Montgomery County, Maryland]** | * | |
| | | |
| **and** | * | **CIVIL NO.: 1:19-cv-2439** |
| | | |
| **CHARM CITY PUPPIES, LLC** | * | |
| **d/b/a CHARM CITY PUPPIES & BOUTIQUE** | | |
| **8205 Snowden River Parkway** | * | |
| **Columbia, MD 21045** | | |
| **[Howard County, Maryland]** | * | |
| | | |
| **and** | * | |
| | | |
| **TODAY'S PET, INC.** | * | |
| **d/b/a TODAY'S PET** | | |
| **8221 Gateway Overlook Dr.** | * | |
| **Elkridge, MD 21075** | | |
| **[Howard County, Maryland]** | * | |
| | | |
| **and** | * | |
| | | |
| **JODIE HANCOCK** | * | |
| **d/b/a 2 MILE KENNEL** | | |
| **23148 County Road 190** | * | |
| **Bogard, Missouri   64622** | | |
| | * | |
| **and** | | |

1

**SOBRAD, LLC**
**d/b/a Pinnacle Pet**                                    *
**11863 Kenobi Lane**
**Neosho, Missouri 64850**                               *

                              **Plaintiffs**            *

**v.**                                                   *

**BRIAN E. FROSH**                                       *
**MARYLAND ATTORNEY GENERAL**
**200 St. Paul Place**                                   *
**Baltimore, MD 21202**
                                                         *
**and**
                                                         *

**DIVISION OF CONSUMER PROTECTION**
**OFFICE OF THE ATTORNEY GENERAL**                       *
**200 St. Paul Place**
**Baltimore, MD 21202**                                  *

<u>**Serve On**</u>**:**                                 *
**Brian E. Frosh**
**Maryland Attorney General**                            *
**200 St. Paul Place**
**Baltimore, MD 21202**                                  *

**and**                                                  *

**MARYLAND STATE SENATE**                                *
**FINANCE COMMITTEE**
**GENERAL ASSEMBLY OF MARYLAND**                         *
**3 East**
**Miller Senate Office Building**                        *
**Annapolis, MD 21401**
                                                         *
<u>**Serve On**</u>**:**
**Brian E. Frosh**                                       *
**Maryland Attorney General**
**200 St. Paul Place**                                   *
**Baltimore, MD 21202**
                                                         *
**and**

**MARYLAND HOUSE ECONOMIC**                          *
**MATTERS COMMITTEE**
**GENERAL ASSEMBLY OF MARYLAND**                    *
**Room 231**
**House Office Building**                             *
**Annapolis, MD 21401**
                                                     *

**Serve On:**
**Brian E. Frosh**                                   *
**Maryland Attorney General**
**200 St. Paul Place**                               *
**Baltimore, MD 21202**
                                                     *
                    **Defendants**
                                                     *

        *      *      *      *      *      *      *      *      *

# COMPLAINT FOR DECLARATORY
# AND INJUNCTIVE RELIEF

Plaintiffs, Just Puppies, Inc. d/b/a Just Puppies Towson, Just Puppies of Maryland,

Inc. d/b/a Just Puppies Rockville, Charm City Puppies, LLC d/b/a Charm City Puppies &

Boutique, Today's Pet, Inc. d/b/a Today's Pet, Sobrad, LLC d/b/a Pinnacle Pet, and Jodie

Hancock d/b/a 2 Mile Kennel ("Plaintiffs"), by and through their undersigned counsel,

hereby sue Defendants, Brian E. Frosh, in his official capacity as Attorney General for

the State of Maryland, the Division of Consumer Protection in the Office of the Attorney

General, the Maryland Senate Finance Committee and the Maryland House Economic

Matters Committee of the General Assembly of Maryland, for declaratory, injunctive,

and other relief to declare Section 19-703 of Maryland's Business Regulations Article

(banning the sale of dogs and cats by retail pet stores in Maryland effective January 1,

2020) invalid and unconstitutional.  In support, Plaintiffs state as follows:

3

## Parties, Jurisdiction, and Venue

1.      Plaintiff, Just Puppies, Inc. d/b/a Just Puppies Towson, is a Maryland corporation with its principal place of business located as 1028B York Road, Towson, Baltimore County, Maryland.

2.      Plaintiff, Just Puppies of Maryland, Inc. d/b/a Just Puppies Rockville, is a Maryland corporation with its principal place of business at 2004 Veirs Mill Road, Rockville, Montgomery County, Maryland.

3.      Plaintiffs, Just Puppies Towson and Just Puppies Rockville (jointly referred to as "Just Puppies"), are retail pet stores operating in Maryland that display dogs for sale to the public.

4.      Plaintiff, Charm City Puppies, LLC d/b/a Charm City Puppies & Boutique ("Charm City Puppies") is a Maryland limited liability company with its principal place of business located at 8205 Snowden River Parkway, Columbia, Howard County, Maryland.

5.      Plaintiff, Charm City Puppies, operates a retail pet store that displays dogs for sale to the public.

6.      Plaintiff, Today's Pet, Inc. d/b/a Today's Pet ("Today's Pet") is a Maryland corporation with its principal place of business located at 8221 Gateway Overlook Drive, Elkridge, Howard County, Maryland.

7.      Plaintiff, Today's Pet, operates a retail pet store that displays dogs for sale to the public.

8.      Plaintiff, Jodie Hancock ("Ms. Hancock"), is a resident of Missouri who resides at 23148 County Road 190, Bogard, Missouri.  Ms. Hancock is a sole proprietor who trades as "2 Mile Kennel" and is a commercial breeder of dogs who is licensed by the United States Department of Agriculture ("USDA") and the State of Missouri.

9.      Plaintiff, Sobrad, LLC d/b/a Pinnacle Pet ("Pinnacle Pet") is a Missouri corporation with its principal place of business located at 11863 Kenobi Lane, Neosho, Missouri. Pinnacle Pet is a commercial broker of dogs that is licensed by the USDA and the States of Missouri, Pennsylvania, Ohio, Georgia, Colorado, Kansas, and the City of Las Vegas, Nevada.  Pinnacle Pet also is licensed by the USDA to transport the dogs from State to State.

10.     Defendant, Brian E. Frosh, is the Attorney General of the State of Maryland. Under the Constitution of Maryland, the Attorney General shall defend on the part of the State of Maryland all cases pending in all federal courts against the State, or in which the State may be an interested party. Md. Const. art. V § 3.  Mr. Frosh is sued in his official capacity on behalf of the State of Maryland whose General Assembly passed the "No More Puppy-Mill Pups Act" on April 24, 2018, which goes into effect on January 1, 2020, and bans the sale of all dogs and cats from retail pet stores in Maryland. The pet store ban was enacted as an amendment to Section 19-703 of the Maryland Business Regulation Article ("Maryland's Pet Store Ban"). (Exh. 1 at

0013-14).[1] Therefore, the State is an interested party in this lawsuit and the Attorney General, in his official capacity, shall defend this case on the part of the State.

11.     Defendant, Division of Consumer Protection in the Office of the Attorney General, is responsible for enforcing Maryland's Pet Store Ban.  Violations and/or enforcement of Maryland's Pet Store Ban is subject to Maryland's Consumer Protection Act, which is administered by the Consumer Protection Division.  (Exh. 1 at 0017 -- Md. Code Ann., Bus. Reg. §19-704 and Md. Code Ann., Comm. Law. §13-201).

12.     Defendant, Maryland State Senate Finance Committee of the General Assembly of Maryland, is a committee of the Maryland State Senate that addresses issues, including but not limited to commercial laws and consumer protection. Maryland State Senate Finance Committee is a necessary and interested party as the Editor's Note to Maryland's Pet Store Ban (Section 19-703) states that "it is the intent of General Assembly that . . . the Senate Finance Committee and the House Economic Matters Committee monitor the implementation of this Act."  (Exh. 1 at 0013-14).

13.     Plaintiffs challenge Maryland's Pet Store Ban as unconstitutional under various provisions of the United States Constitution and Maryland's Declaration of Rights. Plaintiffs further challenge Maryland's Pet Store Ban as preempted by 7 U.S.C. § 2133.

---

[1] Attached hereto as Exhibit 1 are the current retail pet store statutory regulations, promulgated as Md. Code Ann., Bus. Reg. Art., § 19-701, *et seq.*, as well as the amendments thereto, effective January 1, 2020.

14.     Plaintiffs' causes of action arise under 7 U.S.C. § 2133, the United States Constitution, and the Federal Declaration of Rights Statute set forth in 28 U.S.C. §2201(a).  Jurisdiction is therefore proper in this Court pursuant to 28 U.S.C. § 1331.

15.     Defendants operate in the State of Maryland and a substantial part of the events giving rise to the claims set forth in this Complaint occurred in Maryland. Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391(2).

## BACKGROUND FACTS

## Maryland's Retail Pet Store Laws – 2012

16.     In 1966, the Animal Welfare Act ("AWA") was enacted at the federal level to regulate the trade and treatment of dogs and cats to be sold as pets. 7 U.S.C. § 2131. The Congressional Statement of Policy as set forth under Section 2131 of the AWA states:

> The Congress finds that animals and activities which are regulated under [the AWA] are either in interstate or foreign commerce or substantially affect such commerce or the free flow thereof, and that regulation of animals and activities as provided in [the AWA] is necessary to prevent and eliminate burdens upon such commerce and to effectively regulate such commerce, in order . . .
>
> (2) to assure the humane treatment of animals during transportation in commerce; and
>
> (3)  to protect the owners of animals from the theft of their animals by preventing the sale or use of animals which have been stolen.
>
> The Congress further finds that it is essential to regulate, as provided in [the AWA], the transportation, purchase, sale, housing, care, handling, and treatment of animals by carriers or by persons or organizations engaged in . . . holding them for sale as pets or for any such purpose or use.

7 U.S.C. § 2131.

17.     The AWA includes certain licensing requirements and animal welfare standards to be determined by the USDA for breeders of pets. 7 U.S.C. § 2133 - 2160. The AWA was intended to regulate animals distributed for sale so that welfare standards, transparency, and accountability were maintained for those animals through the commercial channel.   The United States Department of Agriculture ("USDA") is responsible for promoting and enforcing the AWA.

18.     In 2012, twenty (20) States enacted legislation that exceeded the standards promulgated by the AWA. These States required strict recordkeeping requirements of breeders and pet stores and provided recourse to consumers for sick animals purchased from pet stores. Maryland sought to enact legislation in 2012 in accordance with these laws to further combat what animal activists have deemed "puppy mills." SB 317, 2012 Md. Gen. Assemb., Reg. Sess. (Md. 2012).

19.     Legislation to further these goals was approved in Maryland on May 2, 2012 and took effect on October 1, 2012. SB 317, 2012 Md. Gen. Assemb., Reg. Sess. (Md. 2012). The enactment of the amendment to Section 19-703 was intended to prevent "retail pet stores" from selling pets sourced from alleged "puppy mills" and protect consumers from pets sourced from breeders employing substandard welfare conditions.   A "retail pet store" is defined under the Maryland statute as "a for-profit establishment open to the public that sells or offers for sale domestic animals to be kept as household pets." (Exh. 1 – 001 -- Md. Code Ann., Bus. Reg. § 19-701(j) (2012)).

20.     The 2012 legislation requires retail pet stores to provide a written record of breeders and dealers of pets sold in-store, including the state in which the breeder or dealer of the dog is located and their USDA license number. (Exh. 1 – 010 -- Md. Code Ann., Bus. Reg. § 19-703 (2012) (subject to repeal effective January 1, 2020)). This information is required to be posted "conspicuously" on each dog's cage. *Id.*

21.     Pet store owners are required to maintain and post a written record about each dog including the breed, age, and date of birth of the dog. *Id.* Pet store owners are also required to maintain a record identifying markings of the dog and documentation of all medical treatments and diagnoses. *Id.* At the time of purchase, pet store owners are required to provide to the purchaser a health certificate from a licensed veterinarian certifying the health of the pet. *Id.*

22.     All records are required to be maintained for one (1) year after the date of sale of the dog and are to be made available to the Consumer Protection Division, bona fide prospective purchasers, and the actual purchaser at time of sale. *Id.*

23.     Purchasers are also entitled to a remedy if, within seven (7) days of purchase, the dog is examined by a veterinarian and found to suffer from a disease or illness adversely affecting the health of the dog. *Id.*

24.     Pet store owners are subject to enforcement and penalty provisions under Maryland's Consumer Protection Act in the Commercial Law Article for unfair and/or deceptive trade practices for any violation of these laws. *Id.*  All of these laws are in effect today to safeguard Maryland consumers until Maryland's Pet Store Ban takes

effect on January 1, 2020, at which time Maryland's retail pet stores will go out of business and all such legislative safeguards will be eliminated.

25.     Non-profit shelters and rescues were, and still are, exempt from the requirements of the consumer protection laws as well as the sourcing requirements set forth in Maryland's 2012 legislation. (Exh. 1 at 006 -- Md. Code Ann., Bus. Reg. § 19-702 ("This subtitle does not apply to an animal welfare organization or animal control unit operating within a retail pet store.")).

**Maryland's Strict Sourcing Requirements for Retail Pet Stores – 2016**

26.     In 2016, Maryland added Section 19-702.1 to the Maryland retail pet store regulations to further combat what animal welfare activists saw as the "puppy mill industry." (Exh. 1 at 007 -- Md. Code Ann., Bus. Reg. § 19-702.1 (subject to repeal effective January 1, 2020)).

27.     Section 19-702.1 requires retail pet stores to ensure that breeders and dealers supplying cats and dogs to pet stores meet strict sourcing requirements, including specific licensing and citation information.

28.     The legislation requires Maryland pet store owners to ensure that all breeders and dealers sourcing to their pet stores held a current USDA license under the AWA. (Exh. 1 at 8807 -- Md. Code Ann., Bus. Reg. § 19-702.1(b)(1) (subject to repeal effective January 1, 2020). Section 19-702.1 effectively banned local breeders and/or hobby breeders from selling pets to Maryland pet stores because these types of breeders are unregulated and do not hold a USDA license.  *See* 7 U.S.C. § 2123 ("[A] dealer…shall not be required to obtain a license…under this Act…if the size of the

business is determined by the Secretary to be de minimis."); United States Department of Agriculture, *Licensing and Registration Under the Animal Welfare Act*, at 11 (revised February 2019) ("Small-scale breeders and other dealers with gross sales under $500 per year are exempt, as long as these sales do not include wild or exotic animals, dogs, or cats.").   USDA regulations state that a USDA license is not required if a breeder maintains a total of four (4) or fewer breeding female dogs and sells only the offspring that were born and raised on the owner's premises.

29.     With the intent to further combat the "puppy mill industry," the legislature sought to ban "roadside sales" in an effort to "close down the unscrupulous breeders who are entirely unregulated…from selling on roadsides and public places." (Transcript of Economic Matters Comm.: Meeting on HB 1113 Before the Gen. Assemb. of Md., 11:3-7 (March 8, 2016)). These "roadside sales" encompassed the sales of pets from local "hobby" breeders, as these types of breeders are completely unregulated.

30.     Amy Jessie of the Humane Society of the United States noted, "Sellers consistently said they were small, local, family breeders but then our investigators actually visited the kennels and found deplorable conditions . . . another real problem from the consumer angle is that you buy a puppy, the puppy is sick . . . you can't find the seller." (Transcript of Economic Matters Comm.: Meeting on HB 1113 Before the Gen. Assemb. of Md., 13:13-16, 14:9-14 (March 8, 2016)). Therefore, the 2016 legislation banned the sales of pets from local "hobby" breeders due to the "deplorable

conditions" of these breeding operations that were not licensed and regulated by the USDA.

31.     Pet store owners are also required to ensure that all breeders and dealers sourcing pets had not received certain citations from the USDA. Md. Code Ann., Bus. Reg. § 19-702.1(b)(2) (subject to repeal effective January 1, 2020). Breeders and dealers could not have received (i) a citation on final inspection within two years of sale of pet, (ii) citations on two or more consecutive final inspections for a repeat noncompliant item within two years of sale of pet, (iii) a citation on the two most recent inspections for a no-access violation, or (iv) three or more citations on the most recent inspection report for any other noncompliant item. *Id.*

32.     Although the federal government did not restrict federally licensed breeders and dealers from selling pets due to USDA citations, Maryland's legislation restricted pet stores from sourcing from breeders and dealers with certain USDA citations and prohibited the sale of pets sourced from unregulated local "hobby" breeders. The 2016 Maryland legislation effectively served as a stricter law to the federal regulations.   All of these 2016 laws are in effect today to safeguard Maryland consumers until Maryland's Pet Store Ban takes effect on January 1, 2020, at which time Maryland's retail pet stores will go out of business and all such legislative safeguards will be eliminated.

### Maryland's Retail Pet Store Ban – 2018

33.     Following the successful enactment of Maryland's 2016 sourcing requirements, animal welfare organizations continued to claim that Maryland's laws

were not strong enough to combat alleged "puppy mills." (*See* Transcript of Economic Matters Comm.: Meeting on HB 1662 Before the Gen. Assemb. of Md., 37:5-7 (March 12, 2018)). These groups alleged, without any factual evidence, that Maryland retail pet stores were fueling the growth and establishment of unlicensed and uninspected "puppy mills." *Id.*

34.     Animal welfare organizations made these unfounded claims despite the fact that the Maryland Consumer Protection Division had responded to only a limited number of complaints regarding issues of compliance with Maryland's strict sourcing requirements, and that the Consumer Protection Division had not actually issued any fines as a result of any investigations within the past three years.[2]

35.     Since the enactment of the 2012 legislation, there have been only approximately twenty-five (25) consumer complaints. Of these complaints, only four (4) actually resulted in a violation. These four violations were quickly resolved and did not result in any fines.[3] The majority of the complaints came from individuals

---

[2] State of Maryland, Office of the Attorney General Consumer Protection Division, letter dated March 29, 2018.

[3] Two of these complaints from 2017 and 2018 alleged a deficiency in the posting of inspection reports. The failure to post was unintentional and the stores immediately complied upon notice from the Office of the Attorney General Consumer Protection Division. Two other complaints from 2016 alleged two different pet stores sourcing their pets from rescue organizations that were not 501(c)(3) organizations, or not licensed by the USDA. The store owners were not aware of the legislation making these sales illegal and immediately ceased the sale of all dogs upon notice from the Office of the Attorney General Consumer Protection Division.

associated with animal welfare organizations. Only five (5) of the 25 complaints came from consumers who actually purchased a pet.

36.     Nonetheless, the Maryland State Legislature decided to enact Maryland's Retail Pet Store Ban in 2018, dubbed the "No More Puppy-Mill Pups Act," becoming one of the first states to pass such a law. California has passed a similar State law that went into effect at the beginning of 2019.

37.     The "No More Puppy-Mill Pups Act" was enacted on April 24, 2018 and goes into effect on January 1, 2020. HB 1662, 2018 Md. Gen. Assemb., 438th Reg. Sess. (Md. 2018).

38.     The alleged purpose of the "No More Puppy-Mill Pups Act" is to eradicate so-called "puppy mills" by banning Maryland pet stores from selling dogs or cats regulated by and obtained from USDA licensed breeders. (See HB 1662, 2018 Md. Gen. Assemb., 438th Reg. Sess. (Md. 2018)).  Proponents of the ban argued that USDA standards are insufficient, and that the USDA does not properly oversee or implement its regulations.   Thus, the new Maryland ban was intended to specifically block and/or severely limit USDA licensed breeders from doing business in Maryland by shutting down the retail pet stores who purchase dogs from them.    The majority or USDA licensed breeders and brokers do not sell directly to the public and only sell to retail pet stores.

39.     The other purported State interest for the ban is protecting consumers from purchasing unhealthy animals. The new legislation, however, repeals the strict sourcing and reporting requirements enacted in Maryland in 2016, including the requirement for

pet store owners to provide a health certificate from a licensed veterinarian certifying the health of the pet. *Id.*

40.     Under the "No More Puppy-Mill Pups Act," all retail pet stores in Maryland will be prohibited from selling cats or dogs.  Section 19-703 states:

> (a) Prohibition. -- A retail pet store may not offer for sale or otherwise transfer or dispose of cats or dogs.
>
> (b) Exception. -- This section may not be construed to prohibit a retail pet store from collaborating with an animal welfare organization or animal control unit to offer space for these entities to showcase cats or dogs for adoption.

(Exh. 1 at 13 -- Md. Code Ann., Bus. Reg. § 19-703 (effective January 1, 2020)). "Animal control unit" means a local organization or governmental unit that the appropriate local governmental body designates to house, care for, and control domestic animals of unknown ownership."  (Exh. 1 at 001 Md. Code Ann., Bus. Reg. § 19-701(b) and Md. Code Ann., Crim. Law § 10-617).   "Animal welfare organization" means a nonprofit organization established to promote animal welfare that has tax exempt status under §501(c)(3) of the U.S. Internal Revenue Code."  (Exh. 1 at 001 Md. Code Ann., Bus. Reg. § 19-701(c)).

41.     In the "Editor's Note" to the new law, however, Section 19-703 states that pet stores can still "collaborate" with animal welfare organization or animal control units to showcase pets for adoption or with "local breeders" to showcase pets for purchase.  The Note states:

[I]t is the intent of the General Assembly that:

(1) animal welfare organizations initiate contact with retail pet stores, as provided under § 19-703(b) of the Business Regulation Article, as enacted by Section 1 of this Act, that will no longer be able to offer for sale cats and dogs, to facilitate collaboration to showcase cats and dogs for:

    (i)      adoption from an animal control unit or an animal welfare organization; or

    (ii)     purchase from local breeders; and

(2) the Senate Finance Committee and the House Economic Matters Committee monitor the implementation of this Act.

(Exh. 1 at 0013-14).  A "local breeder" is not defined under the new Maryland Pet Store Ban.

42.     If a retail pet store violates the Maryland Pet Store Ban, it is subject to civil fines and penalties for unfair and deceptive trade practices within the meaning of Title 13 of the Commercial Law Article.  (Exh. 1 at 0017 -- Md. Code Ann., Bus. Reg. § 19-704).

43.     While the new legislation prohibits Maryland retail pet stores from selling dogs or cats from regulated sources, the legislation does not prohibit Maryland consumers from purchasing cats or dogs from unregulated sources, such as the internet or newspaper or other print advertising, and from unregulated non-profit animal welfare organizations, shelters, and local breeders.

44.     As part of the legislative history, the Fiscal and Policy Note from the Department of Legislative Services found that the new legislation will significantly

reduce the revenues of small businesses in Maryland, specifically small retail pet stores, to the point where these businesses will go out of business.[4]

45.    The new ban on the sale of pets will effectively shift the sale of puppies from regulated retail pet stores to unregulated marketplaces, such as throughout the internet.[5]

### Impact on Plaintiffs

46.    Just Puppies is a family-owned business that started in 1997 in Orlando, Florida.  Just Puppies opened its first retail pet store in Laurel, Maryland in 1999.  Just Puppies Towson opened on or about April 15, 2001, and Just Puppies Rockville opened its store on or around April 15, 2004. The store in Laurel closed in April 2009 after an expired lease.

47.    Just Puppies only sells dogs and does not display any other animals for sale at its stores that are open to the public.  Approximately 90 – 95 percent of the gross sales of Just Puppies is from the sale of dogs.  The other 5 – 10 percent of sales are derived from pet accessories sold in the stores.

48.    Just Puppies sources its dogs from good and reputable USDA and State licensed commercial breeders.

---

[4] Dep't of Leg. Serv., Fiscal and Policy Note HB 1662, 2018 Sess., at 3 (2018).

[5] Statement from Edwin Sayres, Former President of ASPCA, included in the legislative history of HB 1662.

49.     One of the reputable breeders from whom Just Puppies obtains its dogs is Ms. Hancock, who is a licensed USDA and State of Missouri commercial breeder, with whom Just Puppies has been doing business for over 15 years.

50.     As a commercial breeder licensed by the USDA, Ms. Hancock must submit annual applications for license renewals which report the number of dogs sold annually as well as the dollar amounts received from those sales.  As part of the USDA and State of Missouri licensing requirements, Ms. Hancock's facilities are subject to random and unannounced inspections from State and Federal inspectors.  The USDA and Missouri inspectors spend several hours reviewing a checklist of State and Federal regulations to ensure that Ms. Hancock is in full compliance every year.  If any issues arise during the inspection, a report is provided reflecting any noncompliant items.

51.     Ms. Hancock has been operating her breeding facilities for over 15 years and has not been found in violation of any USDA or State of Missouri regulations.

52.     Ms. Hancock maintains full and accurate records of all pedigrees, dates of birth, as well as complete health and vaccination records.  Ms. Hancock routinely has the dogs treated and inspected by licensed veterinarians.

53.     Ms. Hancock breeds purebred dogs as well as designer breeds, such as Golden Doodles (a mix between a Golden Retriever and a Poodle).

54.     Representatives from Just Puppies also visit Ms. Hancock's facilities on a routine basis to ensure the quality and safety of her operation.

55.     Ms. Hancock, and other similarly situated breeders, do not maintain any websites and do not sell directly to the public.  Licensed breeders such as Ms. Hancock sell exclusively to retail pet stores.

56.     Charm City Puppies opened its retail pet store to the public in January 2012 and is family owned and operated by Maryland residents.  Charm City Puppies carries a variety of the most popular purebred dogs and designer breed puppies.  Charm City Puppies sources its dogs from licensed and reputable brokers, such as Pinnacle Pet, who only sell to retail pet stores.

57.     Charm City Puppies derives approximately 90 - 95 percent of its gross revenues from the sale of dogs, and the other approximately 5 - 10 percent of revenues is from pet accessories.

58.     Today's Pet is a family-owned retail pet store that started selling pets to the public in 1996 in Howard County, Maryland. Today's Pet opened its store in the Columbia Mall in or around 2010.

59.     Today's Pet sells dogs, cats, birds, reptiles, fish, and other small animals. Approximately one-half of the gross sales of Today's Pet is from the sale of dogs and cats. Today's Pet sources its dogs, as well as its other animals, from good and reputable USDA and state licensed commercial breeders.

60.     One of the reputable brokers from whom Charm City Puppies and Today's Pet obtains its dogs is Pinnacle Pet, which is a licensed commercial broker by the USDA, the State of Missouri, and numerous other States.

61.     Although Pinnacle Pet maintains a website, Pinnacle Pet does not sell directly to the public, only to retail pet stores. Pinnacle Pet uses a comprehensive online web portal to showcase dogs from licensed USDA and State commercial breeders.  The web portal contains extensive and detailed information on each licensed USDA breeder as well as all health records for the dogs.  When a puppy is purchased through Pinnacle Pet, all data regarding the health records and the breeder information is collected and provided to the retail pet stores, such as Charm City Puppies and Today's Pet, as part of the transaction.   All these documents are ultimately provided to the customer purchasing the puppy.

62.     As a commercial broker licensed by the USDA, Pinnacle Pet must submit annual applications for license renewals that report the number of dogs sold annually as well as the dollar amounts received from those sales.  As part of the USDA and State of Missouri licensing requirements, Pinnacle Pet's facilities are subject to random and unannounced inspections from Missouri and Federal inspectors.   The USDA and Missouri inspectors spend several hours reviewing a checklist of State and Federal regulations to make sure that Pinnacle Pet is in full compliance every year.  If any issues arise during the inspection, a report is provided reflecting any noncompliant items.

63.     Pinnacle Pet has been operating as a broker for over six years and has not been found in violation of any USDA, State of Missouri, or any other State's regulations.

64.     Pinnacle Pet maintains full and accurate records of all pedigrees and dates of birth, as well as complete health and vaccination records.  Pinnacle Pet routinely has the dogs treated and inspected by licensed veterinarians.

65.     Pinnacle Pet purchases and sells purebred dogs as well as designer breeds.

66.     When sourcing pets out-of-state, Pinnacle Pet uses various routes to deliver pets to several stores at once. Maryland's pet stores that source their pets from Pinnacle Pet are on the same route as pet stores in Pennsylvania. However, Maryland's pet stores constitute a large percentage of sales on this route. Once Maryland's Pet Store Ban takes effect on January 1, 2020, Pinnacle Pet would no longer be able to utilize this route, thus losing business with pet stores in Pennsylvania, as well as the pet stores in Maryland.   Closing this route and losing such business from Maryland (and Pennsylvania) will have a substantial impact on Pinnacle Pet's revenue and will cause the company to have to immediately terminate certain employees dedicated to this route servicing Maryland's retail pet stores.

67.     Just Puppies, Charm City Puppies, and Today's Pet follow all requirements for retail pet stores in Maryland to sell their puppies to the public.  Md. Code Ann., Bus. Reg. § 19-703(a)(3) states:

A retail pet store that sells dogs shall:

(3)     maintain a written record that includes the following information
        about each dog in the possession of the retail pet store:

        (i)     the breed, age, and date of birth of the dog, if known;
        (ii)    the sex, color, and any identifying markings of the dog;
        (iii)   documentation of all inoculations, worming treatments, and
                other medical treatments, if known, including the date of the

                 medical treatment, the diagnoses, and the name and title of the treatment provider;

(iv)    the name and address of:

        (1)    the breeder or dealer who supplied the dog;

        (2)    the facility where the dog was born; and

        (3)    the transporter or carrier of the dog, if any;

(v)    the United States Department of Agriculture license number of the breeder or dealer, if required;

(vi)    any identifier information, including a tag, tattoo, collar number, or microchip; and

(vii)    if the dog is being sold as registered or non registered:

        (1)    the names and registration numbers of the sire and dam; and

        (2)    the litter number.

(Exh. 1 at 0010 -- Md. Code Ann., Bus. Reg. § 19-703 (subject to amendment effective January 1, 2020)).

68.    Just Puppies, Charm City Puppies, and Today's Pet also provide health certificates at the time of sale to customers for all dogs they sell pursuant to Maryland law, Section 19-704 of the Business Regulation Article, which states:

A retail pet store shall provide to a purchaser at the time of a sale of a dog:

(1)    a health certificate from a veterinarian licensed in the State issued within 30 days before the date of sale certifying that the dog:

    (i)    has no known disease, illness, or congenital or hereditary condition which is diagnosable with reasonable accuracy; and

    (ii)    does not appear to be clinically ill from parasitic infection at the time of the examination;

(2)    the written record about the dog maintained by the retail pet store under § 19-703(a)(2) of this subtitle; and

(2)    a statement notifying the purchaser of the specific rights available to the purchaser under this subtitle.

(Exh. 1 at 0015 -- Md. Code Ann., Bus. Reg. § 19-704 (subject to amendment effective January 1, 2020)).

69.     Just Puppies, Charm City Puppies, and Today's Pet also provide notice of the rights and remedies of purchasers under the Business Regulation Article for the sale of dogs at retail pet stores.

70.     Just Puppies, Charm City Puppies, and Today's Pet also provide customers limited warranties regarding the health and condition of the puppies purchased by customers. Just Puppies utilizes licensed veterinarians to examine all puppies at least twice prior to the sale to the public and all puppies are reexamined by an approved veterinarian within five days after purchase. Charm City Puppies and Today's Pet also have a licensed veterinarian examine all puppies prior to offering a puppy for sale and provide the customer with a free veterinary exam within several days of the date of sale.

71.     While Just Puppies, Charm City Puppies, and Today's Pet maintain websites, they do not sell puppies online.  All transactions take place at the retail pet store locations.

72.     Once Maryland's Pet Store Ban takes effect on January 1, 2020, Just Puppies, Charm City Puppies, and Today's Pet will go out of business due to the ban on the sale of dogs which represents 90 – 95 percent of their revenues.  Other retail pet stores that sell dogs and cats to the public are expected to go out of business as well. Maryland residents who work at these stores will lose their jobs.

73.     Customers and Maryland residents will no longer be able to purchase purebred and designer breed dogs from retail pet stores in Maryland. Unregulated shelters and rescues do not supply purebred and designer breed puppies. Maryland

residents will not have safe access to good and reputable licensed commercial breeders and reputable brokers.

74.     Once Maryland's Pet Store Ban takes effect, Maryland residents seeking to purchase purebred and designer puppies will have to rely on unregulated shelters and rescues, the unregulated internet and print advertising to try to locate such dogs. Internet pet sales have a notoriously high incidence of fraud and scams which will only increase against Maryland residents once the ban takes effect.

### Better Business Bureau Risk Reports

75.     According to the 2018 Better Business Bureau Risk Report, pets were the top product of online purchase scams to consumers nationwide – these pet sale scams represented 26.2% of all online purchase scams. Better Business Bureau, *2018 BBB Scam Tracker Risk Report*, 14 (2018). [6]

76.     The Better Business Bureau asserts that complaint numbers only hint at the size of the scheme, as many victims either choose not to file complaints or do not know how to seek assistance. Better Business Bureau, *Puppy Scams: How Fake Online Pet Sellers Steal from Unsuspecting Pet Buyers*, 4 (September 2017).

77.     The Better Business Bureau suggests consumers avoid pet sale fraud by inspecting pets first-hand before purchase. Better Business Bureau, *Puppy Scams: How*

---

[6] Online pet sale scams are so prevalent that several websites have been created for consumers to report fraud and provide notice of scam websites. *See* www.petscams.com (providing a forum to report and view lists of all websites reported to be a pet scam); *see also* www.ipata.org/pet-scams (maintaining a list of pet scams online and advice for consumers seeking to avoid pet scams).

*Fake Online Pet Sellers Steal from Unsuspecting Pet Buyers*, 9-10 (September 2017). However, Maryland's Pet Store Ban will significantly hinder the consumers' ability to inspect pets first-hand since they will no longer be able to visit pets in stores for purchase.

### Unregulated Local Hobby Breeders and Animal Shelters

78.     Although the AWA regulates the licensing and conditions of pet breeders, it does not regulate the conditions of animal shelters, non-profit animal rescue organizations, or local hobby breeders (a breeder that maintains four (4) or fewer breeding female dogs and sells only the offspring that were born and raised on the owner's premises).

79.     In April 2019, police arrested two individuals in Carroll County, Maryland for charges of animal cruelty after twenty-seven (27) dogs were found dead on their property. Kate Ryan, *Duo Behind Illegal Md. Breeding Operation Jailed After Dozens of Dogs Found Dead*, WTOP (April 9, 2019). Twenty-seven (27) more dogs were found inside, alive but in critical need of care. *Id.*

80.     The individuals arrested were local hobby breeders and were "connected to an unlicensed dog breeding operation" in Carroll County. *Id.* Maryland's Pet Store Ban, in its efforts to eradicate so-called "puppy mills," will encourage Maryland consumers to purchase pets from these unlicensed local hobby breeders.

81.     In May 2019, Animal Control removed 165 animals from the Animal Welfare Society of Howard County due to "poor conditions." Jess Nocera, *165 Animals Removed from Now-Closed Columbia Animal Shelter*, *The Baltimore Sun* (May 19,

2019). The shelter was subsequently shut down. *Id.* Some animals removed may never be healthy enough for adoption. *Id.*

82.     The Animal Welfare Society shelter was reported to have a foul odor, overcrowding, and a general lack of cleanliness. *Id.* These are the same conditions the Maryland legislation is hoping to eradicate in so-called "puppy mills."  This incident highlights the fact that unregulated sources, such as shelters and rescues, lack legal oversight that would require them to maintain certain humane standards of care and cleanliness. The Animal Welfare Society of Howard County was a non-profit rescue with tax-exempt status under §501(c)(3) of the IRS Code, and thus, would have qualified as an "Animal Welfare Organization" under Maryland's Pet Store Ban.

83.     Furthermore, the sourcing of dogs obtained by animal shelters is currently unregulated. In May 2019, the Center for Disease Control was forced to implement a ban on dogs imported from Egypt after dogs imported at a Kansas animal shelter tested positive for rabies. Stephanie Ebbs, *CDC to Block Imports of Dogs from Egypt, Citing Rabies Concerns*, ABC News (May 10, 2019).

84.     Animal rescue organizations throughout the United States often collaborate with large international rescue groups, such as Humane Society International, which work in other countries to "re-home" animals; however, there is no formal way to track where the dogs "rescued" overseas actually come from or what happens to these dogs once they are placed in U.S. homes. *Id.* There are frequently large shipments of puppies from overseas puppy mills that are shipped to the United States as "rescue dogs." *Id.* There is no way to know the origins of these dogs coming in from foreign countries, but

the rescue groups claim they are obtained from "meat dog farms" and are "street dogs." These claims cannot be substantiated, and upon information and belief, Plaintiffs assert that many of the puppies and pure-bred dogs are obtained from breeders. As unregulated entities, animal shelters can source dogs from these overseas countries with no oversight whatsoever. Maryland's legislation will cause Maryland consumers to have to obtain pets from unregulated animal rescues and shelters, with no verifiable information regarding the pets' history or health.

85.     Additionally, as unregulated entities, animal rescue organizations are able to obtain their animals from the very sources the legislation intends to eradicate, including so-called "puppy mills" with substandard welfare conditions.

86.     Non-profit "rescues," such as National Mill Dog Rescue, claim to rescue puppies from "puppy mills," but continue to obtain pets from breeders, brokers, and dog auctioneers.[7] National Mill Dog Rescue, a nonprofit organization, brings in three-million dollars ($3,000,000) per year from "adoption fees" whereby they charge thousands of dollars for certain breeds – just like retail pet stores. *Id.* In July 2019, National Mill Dog Rescue was given a cease and desist order by the Colorado State Board of Veterinary Medicine due to falsified vaccination records and unlicensed issuance of vaccines to dogs without a veterinarian present.[8]

---

[7] Kim Kavin, *When 'Puppy Mill Rescue' Blurs The Line Between Saving And Selling Dogs*, *Huffington Post* (July 14, 2019).

[8] Chase Golightly, *National Mill Dog Rescue in Peyton Receives Cease and Desist Order from State Board*, KRDO (July 19, 2019).

87.     Rescue organizations such as National Mill Dog Rescue also source their pets to other animal shelters around the country,[9] effectively acting as a broker to Maryland shelters, such as the Maryland SPCA.[10]

88.     The Maryland Pet Store Ban creates an exception to allow for animal welfare organizations (such as Animal Welfare Society of Howard County or National Mill Dog Rescue) to control any future ability of retail pet stores to sell dogs in Maryland after January 1, 2020.  (Exh. 1 – 013 -- §19-703(b) and the Editor's Note). According to the new law, animal welfare organizations are supposed to "initiate contact" with retail pet stores "to facilitate collaboration" to showcase cats and dogs for adoption or "purchase from local breeders."  All groups which are totally unregulated. The legislation creates a monopoly for these "rescue" organizations and continues to allow pets to enter Maryland from breeders and brokers, contrary to the legislation's intent.

### The Typical Stream of Commerce for Commercially Produced Puppies

89.     Under the current retail pet store model, federally licensed wholesale producers ("breeders") may sell to federally licensed brokers (Class A/B dealers). These brokers then deliver the pets to the retail pet stores for sale. Charm City Puppies

---

[9] "Rescue average – 140 dogs/month, about half are transported to rescue partners coast to coast." https://nmdr.org/wp-content/uploads/2014/05/NMDR-Facts-052514.pdf

[10] ". . . [W]e bring in more than 1,400 animals from other shelters to help save more lives in the community." Maryland SPCA website, https://www.mdspca.org/about.

and Today's Pet obtain their pets through this model, utilizing federally licensed brokers.

90.     Alternatively, federally licensed wholesale producers ("breeders") may sell directly to retail pet stores. Just Puppies utilizes this model to obtain its pets to sell in its stores.

91.     The Maryland Pet Store Ban will interrupt this typical stream of interstate commerce for the sale of pets in Maryland through retail pet stores. The new legislation will disrupt the free market of commercially bred pets and instead favor non-profit and governmental sourced animals and unregulated local hobby breeders, and/or cause Maryland residents to have to utilize the unregulated internet, which has the highest incidence of fraud for this type of online consumer sale.

**COUNT I**
**VIOLATION OF COMMERCE CLAUSE –**
**FACIALLY DISCRIMINATORY AGAINST OUT-OF-STATE**
**BREEDERS AND BROKERS**

92.     Plaintiffs incorporate Paragraphs 1 through 91 above as fully set forth herein.

93.     The Commerce Clause empowers Congress "to regulate commerce . . . among the several states. . . ."  U.S. Const. art. I, § 8, cl. 3.  The Commerce Clause, however, also has a corresponding "negative" or "dormant" aspect that limits the power of state and local governments to enact laws affecting interstate commerce.  *See Oklahoma Tax Commission v. Jefferson Lines, Inc.*, 514 U.S. 175 (1995); *Huges v. Oklahoma*, 441 U.S. 322 (1979).

94.     Under the dormant commerce clause, states may not pass legislation that unjustifiably discriminates against interstate commerce whether on its face, in its effect, or in its purpose. *Envtl. Tech. Council v. Sierra Club*, 98 F.3d 774, 785 (4th Cir. 1996).

95.     Maryland's Pet Store Ban is discriminatory against out-of-state breeders on its face. The Editor's Note reflects that it is the intent of the General Assembly that animal welfare organizations initiate contact with retail pet stores (which will no longer be able to sell dogs and cats) and facilitate "purchase from local breeders." (Exh. 1 at 0013-14 -- Section 19-703).  Maryland's Pet Store Ban creates differential treatment of in-state and out-of-state economic interests that benefit Maryland local breeders and burden out-of-state breeders.

96.     Maryland has a handful (approximately four) USDA commercially licensed dog breeders.  Some of these breeders sell directly to the public through their websites, however, they are not "retail pet stores" since they are not "open to the public."  (Exh. 1 – 001 -- Section 19-701(j)).

97.     "Local breeders" as set forth in Maryland's Pet Store Ban are not defined. Under Section 19-701(d), "breeder" is defined as "a person who breeds or raises dogs to sell, exchange, or otherwise transfer to the public."  (Exh. 1 at 001-- Section 19-701(d)). Maryland's definition does not distinguish between commercial USDA licensed breeders and hobby breeders, which are exempt from USDA regulations because they have less than four (4) female breeding dogs.

98.     The plain language of Maryland's Pet Store Ban creates an exception for the facilitation of sales through local Maryland breeders to the detriment of out-of-State

USDA licensed breeders, such as ones used by Just Puppies and Charm City Puppies to source their dogs for sale. The ban would facially disallow the sale of any dogs from out-of-state breeders in Maryland pet stores since they are not a "local breeder."

99.     The Maryland Pet Store Ban will also make it impossible for out-of-state breeders and brokers to sell within Maryland under their current business models, since they are not a "local breeder," therefore discriminating against out-of-state breeders and brokers in its effect.

100.    The Maryland Pet Store Ban's purpose is to remove Maryland from the nationwide market of pet sales in stores in hopes of eradicating the so-called puppy mill industry. However, a State may not achieve a local economic goal by isolating itself from the national economy. *City of Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978). Therefore, the Maryland Pet Store Ban discriminates against out-of-state breeders and brokers in its purpose.

101.    Maryland has no factual justification whatsoever to discriminate against out-of-state breeders or brokers and create a monopoly for the animal welfare organizations to coordinate potential sales for Maryland pet stores only from "local breeders."

102.    As a direct and proximate cause of Maryland's Pet Store Ban, Plaintiffs, Jodie Hancock d/b/a 2 Mile Kennel, and Sobrad, LLC d/b/a Pinnacle Pet, will be significantly harmed and suffer economic damages.

WHEREFORE, Plaintiffs, Jodie Hancock d/b/a 2 Mile Kennel, and Sobrad, LLC d/b/a Pinnacle Pet, respectfully request that this Honorable Court enter judgment

against Defendants, Brian E. Frosh, Attorney General for the State of Maryland, the Office of the Attorney General Consumer Protection Division, Maryland State Senate Finance Committee, and the Maryland House Economic Matters Committee, and declare that the Maryland Pet Store Ban is unconstitutional, and award attorneys' fees, costs, and other such relief as this Court deems just and proper.

## COUNT II
## VIOLATION OF COMMERCE CLAUSE – FACIALLY DISCRIMINATORY AGAINST IN-STATE RETAIL PET STORES

103.    Plaintiffs incorporate paragraphs 1 through 102 above as fully set forth herein.

104.    The intent of Maryland's Pet Store Ban is to also prevent competition with out-of-state commercially bred pets, thereby supposedly giving local dogs and cats an increased chance of being adopted. However, in order to achieve this goal, the legislation only prohibits pet stores from selling out-of-state pets. Consumers are still technically able to seek these USDA regulated and licensed commercial breeders, and these out-of-state breeders are still able to sell to Maryland consumers. Thus, the State is discriminating against in-state retail pet stores.

105.    The Maryland Pet Store Ban seemingly encourages the exchange of dogs from unregulated, unspecified sources as the only dogs in the State's stream of commerce, as these are the dogs offered for sale through the unregulated rescues, animal shelters, and unregulated local breeders. Those organizations and breeders are the only business entities permitted to collaborate with pet stores under the new legislation.

106.    Because the Maryland law does not restrict the sale of dogs from out-of-state breeders and/or brokers via the internet or other means, but does restrict the sale of dogs via retail establishments in Maryland, the State is discriminating against in-state retail pet stores based on the origin of their products, which violates the Commerce Clause. *Chemical Waste Management, Inc. v. Hunt*, 504 U.S. 334 (1992). The Maryland Pet Store Ban discriminates against in-state pet stores because it cuts off their supply of puppies from traditional, regulated, and legal sources, and forces pet stores to obtain their pets from untraditional, unregulated sources, *i.e.*, animal welfare organizations, local hobby breeders, and the internet.

107.    The sources of pets in local shelters, non-profit rescue organizations and from hobby breeders are not regulated by either the State or the federal government.

108.    Furthermore, no evidence was presented during the legislative process demonstrating that puppies purchased from retail pet stores contributed to the number of dogs in local shelters.

109.    As a direct and proximate cause of Maryland's Pet Store Ban, all Plaintiffs will be severely economically impacted once the ban takes effect and Just Puppies, Charm City Puppies, and Today's Pet will go out of business, as will other retail pet stores in Maryland that sell dogs and cats.

WHEREFORE, Plaintiffs, Just Puppies, Inc. d/b/a Just Puppies Towson, Just Puppies of Maryland, Inc., d/b/a Just Puppies Rockville, Charm City Puppies, LLC d/b/a Charm City Puppies & Boutique, and Today's Pet, Inc. d/b/a Today's Pet, respectfully request that this Honorable Court enter judgment against Defendants, Brian

E. Frosh, Attorney General for the State of Maryland, the Office of the Attorney General Consumer Protection Division, Maryland State Senate Finance Committee, and the Maryland House Economic Matters Committee, and declare that the Maryland Pet Store Ban is unconstitutional, and award attorneys' fees, costs, and other such relief as this Court deems just and proper.

## COUNT III
## VIOLATION OF THE COMMERCE CLAUSE – BURDEN ON INTERSTATE COMMERCE VERSUS STATE'S INTERESTS

110.    Plaintiffs incorporate Paragraphs 1 through 109 above as fully set forth herein.

111.    Legislation is deemed to violate the Commerce Clause if it creates more than an incidental burden on commerce that is clearly excessive in relation to a purported local benefit. *Pike v. Bruce Church*, 397 U.S. 137, 142 (1970).

112.    Maryland's Pet Store Ban imposes more than an incidental burden on interstate commerce, which is clearly excessive in relation to any purported local benefits.

113.    Under Maryland's Pet Store Ban, an  excessive burden is created on out-of-state regulated breeders and brokers who will be prohibited from selling to any retail pet stores in Maryland.  The Maryland law, however, still allows "local breeders" and non-profit rescues to collaborate with retail pet stores in Maryland.  The law also allows for out-of-state puppies from unregulated sources to be sold in the State through non-profit rescues and shelters, as well as the internet.

114.    Maryland's Pet Store Ban also creates an excessive burden for local retail pet stores, which will have to completely change their business model of selling pets if they wish to stay in business in order to become storefronts for local non-profit rescues and shelters.  Currently, the sale of dogs constitutes 90-95 percent of the business of local retail pet stores.

115.    Out-of-state breeders such as Ms. Hancock do not sell to the public and do not have a website. Breeders such as Ms. Hancock only sell to pet stores, such as Just Puppies, which will no longer be in business once Maryland's Pet Store Ban takes effect. Therefore, Ms. Hancock and other similarly situated breeders and brokers will have to substantially change their business practices in order to stay in business. Since local breeders and shelters are able to sell directly to Maryland residents and theoretically will be able to sell through Maryland pet stores, this is not an issue that local breeders and shelters will face.

116.    Similarly, reputable brokers such as Pinnacle Pet do not sell directly to residents in Maryland, and only sell through retail pet stores, such as Charm City Puppies and Today's Pet.  Pinnacle Pet will also suffer harm as a result of the Maryland Pet Store Ban and have to substantially change its business practices.

117.    Further, Maryland residents will be required to change their practices as they will not be able to purchase dogs from out-of-state breeders at retail pet stores in Maryland.  The only recourse for Maryland residents to purchase dogs from USDA licensed commercial breeders is over the internet or to travel out of state to try to

purchase.   There are only approximately four licensed USDA breeders in Maryland, which cannot possibly serve the needs of all Maryland residents.

118.    Breeders, such as Ms. Hancock, do not sell to the public and do not have a website, nor does the broker Pinnacle Pet. Maryland residents will no longer have access to these dogs unless they travel out-of-state.

119.    Furthermore, there is no legitimate local Maryland interest served by Maryland's Pet Store Ban.  The purported purpose behind the new law is to eradicate so-called "puppy mills" and reduce the number of animals in shelters.  However, there is and was no factual evidence to support any connection between Maryland's retail pet stores and the unlicensed and uninspected "puppy mills," or breeders who are breeding in substandard conditions.  The other purported State interest is protecting consumers from purchasing unhealthy animals; however, this interest is significantly undermined by the fact that the "No More Puppy-Mills" legislation removed any and all consumer protections related to the purchase of puppies is concerned.

120.    Just Puppies, Charm City Puppies, and Today's Pet source their dogs from reputable licensed commercial breeders and not substandard, unlicensed or uninspected breeders, commonly referred to as "puppy mills."

121.    Contrary to the alleged intentions of the legislation, Maryland's Pet Store Ban will only serve to promote the purchase of puppies from unregulated sources such as the internet and non-profit rescues and shelters, thereby undermining the increase in animal welfare interests the State claims to have.

122.     Furthermore, the State's claims that the Maryland Pet Store Ban is needed in order to solve the State's alleged problem of overcrowded shelters by banning puppies from out-of-state commercial breeders is undermined by the fact that the State continues to allow out-of-state puppies and dogs brought in by non-profit rescues and shelters, and allows Maryland consumers to purchase puppies directly from out-of-state brokers and breeders.

123.     As a direct and proximate cause of Maryland's Pet Store Ban, all Plaintiffs will be economically impacted severely once the ban takes effect and Just Puppies, Charm City Puppies, and Today's Pet will immediately go out of business.  As such, the effects of the Maryland Pet Store Ban on in-state retail pet stores is far beyond incidental and is excessive.

WHEREFORE, Plaintiffs, Just Puppies, Inc. d/b/a Just Puppies Towson, Just Puppies of Maryland, Inc., d/b/a Just Puppies Rockville, Charm City Puppies, LLC d/b/a Charm City Puppies & Boutique, Today's Pet, Inc. d/b/a Today's Pet, Jodie Hancock d/b/a 2 Mile Kennel, and Sobrad, LLC d/b/a Pinnacle Pet, respectfully request that this Honorable Court enter judgment against Defendants, Brian E. Frosh, Attorney General for the State of Maryland, the Office of the Attorney General Consumer Protection Division, Maryland State Senate Finance Committee, and the Maryland House Economic Matters Committee,  and declare that the Maryland Pet Store Ban is unconstitutional, and award attorneys' fees, costs, and other such relief as this Court deems just and proper.

## COUNT IV
## FEDERAL PREEMPTION

124.   Plaintiffs incorporate Paragraphs 1 through 123 above as fully set forth herein.

125.   The purpose of the Animal Welfare Act is to regulate the trade and treatment of dogs and cats used as pets. Under the AWA, the USDA is authorized to promulgate standards in order to assure humane treatment of animals.  The AWA requires a licensing system for breeders which is promulgated by the USDA.

126.   The AWA shall not prohibit any state from promulgating standards in addition to those standards promulgated by the USDA.  Further, the USDA shall cooperate with officials of various states or political subdivisions in carrying out the purposes of the AWA and of any state, local, or municipal legislation or ordinance on the same subject.

127.   Maryland's Pet Store Ban does not attempt to promulgate any additional or complimentary standards to those set forth under the AWA; rather, it completely bans the sale of cats and dogs in Maryland from any federally USDA licensed breeder at any retail pet stores.

128.   The effect of Maryland's Pet Store Ban is to completely subvert the standards set forth by the USDA for commercial licensed dog breeders because dogs from such sources will no longer be permitted to be sold within the State.  Maryland's Pet Store Ban creates an exception to the ban for local breeders in Maryland which are hobby breeders exempt from USDA regulations.  The ban provides that the only

acceptable sourcing of dogs and cats is from unregulated sources with no oversight whatsoever.

129.    Maryland's Pet Store Ban thus conflicts with the AWA and its standards and frustrates Congress's purposes and objectives under the AWA.

WHEREFORE, Plaintiffs, Just Puppies, Inc. d/b/a Just Puppies Towson, Just Puppies of Maryland, Inc., d/b/a Just Puppies Rockville, Charm City Puppies, LLC d/b/a Charm City Puppies & Boutique, Today's Pet, Inc. d/b/a Today's Pet, Jodie Hancock d/b/a 2 Mile Kennel, and Sobrad, LLC d/b/a Pinnacle Pet, respectfully request that this Honorable Court enter judgment against Defendants, Brian E. Frosh, Attorney General for the State of Maryland, the Office of the Attorney General Consumer Protection Division, Maryland State Senate Finance Committee, and the Maryland House Economic Matters Committee,  and declare that the Maryland Pet Store Ban is invalid and federally preempted, and award attorneys' fees, costs, and other such relief as this Court deems just and proper.

## COUNT V
## VIOLATION OF EQUAL PROTECTION CLAUSE

130.    Plaintiffs incorporate Paragraphs 1 through 129 above as fully set forth herein.

131.    The Fourteenth Amendment of the United States Constitution states that no state shall deny any person within its jurisdiction the equal protection of the laws.  U.S. Const. amend. 14.

132.    Maryland's Pet Store Ban treats Plaintiffs differently than others similarly situated and the difference in treatment is not rationally related to any legitimate State interest.  Maryland retail pet stores will be prohibited from selling dogs and cats once the ban takes effect.  Retail pet stores, such as Just Puppies, Charm City Puppies, and Today's Pet, will go out of business once the ban takes effect.  Breeders and brokers can still sell dogs and cats to Maryland residents, and Maryland residents can still continue to purchase dogs and cats from anyone, except retail pet stores.

133.    There is no legitimate State interest in banning retail pet store sales, as no evidence has been shown whatsoever to support the purported interest in reducing "puppy mills" through a ban. Maryland's retail pet stores do not source their dogs from unlicensed and uninspected sources, or "puppy mills." The result of Maryland's Pet Store Ban will be to increase internet sales with unregulated and unlicensed breeders and increase importation of out-of-state and internationally sourced dogs from unknown and unregulated sources, thus creating less protection for dogs in breeding operations, instead of the supposed intended "reduction."  The State fails to show that the Maryland Pet Store Ban will result in any increased consumer protections or welfare standards for dogs.

134.    Maryland has no factual justification whatsoever to discriminate against out-of-state breeders.

135.    Maryland has no factual justification whatsoever to discriminate against in-state retail pet stores. There was no evidence presented during the legislative session showing that Maryland consumers were being defrauded by in-state pet stores, nor was

there any evidence provided that showed that retail pet stores in-state were not fulfilling their duty of full disclosure and consumer protections under the existing state law to citizens who purchased puppies from them.  There also was no evidence showing that puppies sold by in-state retail pet establishments were unhealthy or dying after consumer purchases, nor was there evidence that pet store puppies were contributing to shelter populations.

136.   As a direct and proximate cause of Maryland's Pet Store Ban, all Plaintiffs will be severely economically impacted once the ban takes effect and Just Puppies, Charm City Puppies, and Today's Pet will immediately go out of business.

WHEREFORE, Plaintiffs, Just Puppies, Inc. d/b/a Just Puppies Towson, Just Puppies of Maryland, Inc., d/b/a Just Puppies Rockville, Charm City Puppies, LLC d/b/a Charm City Puppies & Boutique, Today's Pet, Inc. d/b/a Today's Pet, Jodie Hancock d/b/a 2 Mile Kennel, and Sobrad, LLC d/b/a Pinnacle Pet, respectfully request that this Honorable Court enter judgment against Defendants, Brian E. Frosh, Attorney General for the State of Maryland, the Office of the Attorney General Consumer Protection Division, the Maryland State Senate Finance Committee, and the Maryland House Economic Matters Committee, and declare that the Maryland Pet Store Ban is unconstitutional, and award attorneys' fees, costs, and other such relief as this Court deems just and proper.

## COUNT VI
## VIOLATION OF MARYLAND CONSTITUTION - ANTI-MONOPOLY CLAUSE

137.    Plaintiffs incorporate Paragraphs 1 through 136 above as fully set forth herein.

138.    The Maryland Constitution's Declaration of Rights states, "[t]hat monopolies are odious, contrary to the spirit of a free government and the principles of commerce, and ought not to be suffered." Md. Dec. of R. art. 41.

139.    Maryland courts have consistently held that a monopoly under the Maryland Declaration of Rights is a "privilege or power to . . . the operation of a trade or business to the exclusion of others, who otherwise would be at liberty to engage therein, necessarily implying the suppression of competition, and ordinarily causing a restraint of that freedom to engage in trade or commerce which the citizen enjoys by a common right." *Levin v. Sinai Hosp. of Balt. City*, 186 Md. 174, 182 (1945).

140.    The new Maryland legislation creates a monopoly by explicitly banning pet stores from selling all pets, except those pets obtained from unregulated "local breeders" or unregulated rescues or animal shelters.

141.    Under the new Maryland legislation, unregulated "local breeders" and unregulated rescues or animal shelters will have the exclusive privilege and power to sell pets to Maryland consumers.

142.    These unregulated rescues and animal shelters conduct business with USDA breeders and brokers. Maryland's Pet Store Ban suppresses the competition

between pet stores and animal rescues and shelters. The ban creates a monopoly for animal rescues and shelters to do business with USDA breeders and brokers.

143.   Maryland's Pet Store Ban suppresses the competition between pet stores and "local breeders" and animal rescues and shelters. The ban will diminish pet stores' income derived from the sale of pets, as pet stores will only be allowed to "showcase" pets for adoption from local breeders and rescues or animal shelters under the new legislation.

144.   The Maryland Pet Store Ban suppresses the competition between out-of-state breeders and "local breeders" and rescues or animal shelters. Breeders such as Ms. Hancock do not sell to the public and do not have a website. The Maryland Pet Store Ban will thus suppress the competition between these types of breeders who will be prohibited from selling their pets through pet stores, and the local breeders and rescues or animal shelters who will still be able to sell to Maryland pet stores.

145.   Under the new Maryland legislation, Maryland consumers will no longer have the freedom to engage in the trade or commerce of pet sales through Maryland pet stores. Maryland consumers are currently able to buy a variety of pets sold in Maryland pet stores due to the influx of pets provided by out-of-state breeders such as Ms. Hancock. However, the new Maryland Pet Store Ban will not allow pets bred by Ms. Hancock to be sold in Maryland pet stores. Therefore, Maryland consumers will no longer be able to freely buy these particular pets in Maryland.

146.   As a direct and proximate cause of Maryland's Pet Store Ban, all Plaintiffs will be economically impacted severely once the ban takes effect. The ban will suppress

all competition in the pet sale market and will cause a restraint of freedom to engage in trade of commerce which the citizens of Maryland have a common right to enjoy.

WHEREFORE, Plaintiffs, Just Puppies, Inc. d/b/a Just Puppies Towson, Just Puppies of Maryland, Inc., d/b/a Just Puppies Rockville, Charm City Puppies, LLC d/b/a Charm City Puppies & Boutique, Today's Pet, Inc. d/b/a Today's Pet, Jodie Hancock d/b/a 2 Mile Kennel, and Sobrad, LLC d/b/a Pinnacle Pet,  respectfully request that this Honorable Court enter judgment against Defendants, Brian E. Frosh, Attorney General for the State of Maryland, the Office of the Attorney General Consumer Protection Division, the Maryland State Senate Finance Committee, and the Maryland House Economic Matters Committee, and declare that the Maryland Pet Store Ban is unconstitutional, and award attorneys' fees, costs, and other such relief as this Court deems just and proper.

**COUNT VII**
**FEDERAL DECLARATORY JUDGMENT ACT (28 U.S.C. § 2201)**

147.   Plaintiffs incorporate Paragraphs 1 through 146 above as fully set forth herein.

148.   Pursuant to Section 28 U.S.C. § 2201(a), any court of the United States may declare the rights and legal relations of any interested party seeking such declaration in a case of actual controversy within its jurisdiction.

149.   The Plaintiffs and Defendants are interested parties and an actual, real, and substantial controversy exists regarding the validity and enforceability of Maryland's Retail Pet Store Ban under the United States Constitution,  the Maryland Declaration of

Rights, and as set forth above in each count in this Complaint which are all incorporated herein.

150.    Maryland's Pet Store Ban will take effect on January 1, 2020, and all Plaintiffs will be severely economically impacted, and Just Puppies, Charm City Puppies, and Today's Pet will go out of business.    Plaintiffs seek declaratory relief from the Court to declare Maryland's Pet Store Ban unconstitutional and invalid.

WHEREFORE, Plaintiffs, Just Puppies, Inc. d/b/a Just Puppies Towson, Just Puppies of Maryland, Inc., d/b/a Just Puppies Rockville, Charm City Puppies, LLC d/b/a Charm City Puppies & Boutique, Today's Pet, Inc. d/b/a Today's Pet, Jodie Hancock d/b/a 2 Mile Kennel, and Sobrad, LLC d/b/a Pinnacle Pet, respectfully request that this Honorable Court enter judgment against Defendants, Brian E. Frosh, Attorney General for the State of Maryland, the Office of the Attorney General Consumer Protection Division, the Maryland State Senate Finance Committee, and the Maryland House Economic Matters Committee, and:

1.    Declare that Section 19-703 of the Maryland Business Regulation Code Annotated is unconstitutional under Article I, Section 8, Clause 3 of the United States Constitution, and the Fourteenth Amendment of the United States Constitution, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201;

2.    Declare that Section 19-703 of the Maryland Business Regulation Code Annotated is invalid and preempted under the Animal Welfare Act, 7 U.S.C. § 2133, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201;

3.      Declare that Section 19-703 of the Maryland Business Regulation Code Annotated is unconstitutional under Maryland's Declaration of Rights, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201;

4.      Enter a permanent injunction enjoining Defendants and their agents from enforcing Section 19-703 of Maryland's Pet Store Ban;

5.      Award Plaintiffs their reasonable attorneys' fees and costs of this action pursuant to 42 U.S.C. § 1988; and

6.      Grant Plaintiffs such other relief as the Court deems just and proper.

## COUNT VIII
## INJUNCTION (PRELIMINARY AND PERMANENT)

151.    Plaintiffs incorporate Paragraphs 1 through 150 above as fully set forth herein.

152.    The Plaintiffs and Defendants are interested parties and an actual, real, and substantial controversy exists regarding the validity and enforceability of Maryland's Pet Store Ban under the United States Constitution,  the Maryland Declaration of Rights, and as set forth above in each count in this Complaint which are all incorporated herein.

153.    Maryland's Pet Store Ban will take effect on January 1, 2020, and all Plaintiffs will be severely economically impacted, and Just Puppies, Charm City Puppies, and Today's Pet will go out of business.   Plaintiffs seek preliminary and permanent injunctive relief from the Court to declare Maryland's Pet Store Ban unconstitutional and invalid.

154.    Plaintiffs seek a preliminary and permanent injunction against Defendants from any enforcement of Maryland's Pet Store Ban.  Plaintiffs will suffer irreparable injury upon the Maryland Pet Store Ban taking effect on January 1, 2020.  Remedies available at law, such as monetary damages, are inadequate to compensate Plaintiffs for their injuries.  Considering the balance of hardships between the Plaintiffs and the Defendants, a remedy in equity is warranted.  Lastly, the public interest would not be disserved by a preliminary or permanent injunction.

WHEREFORE, Plaintiffs,  Just Puppies, Inc. d/b/a Just Puppies Towson, Just Puppies of Maryland, Inc., d/b/a Just Puppies Rockville, Charm City Puppies, LLC d/b/a Charm City Puppies & Boutique, Today's Pet, Inc. d/b/a Today's Pet, Jodie Hancock d/b/a 2 Mile Kennel, and Sobrad, LLC d/b/a Pinnacle Pet, respectfully requests that this Honorable Court enter a preliminary and permanent injunction against Defendants, Brian E. Frosh, Attorney General for the State of Maryland, the Office of the Attorney General Consumer Protection Division, the Maryland State Senate Finance Committee, and the Maryland House Economic Matters Committee, and enjoin Defendants from enforcement of Section 19-703 of the Maryland Business Regulation Article, and grant Plaintiffs such other relief as the Court deems just and proper.

Dated: August 23, 2019              Respectfully submitted,


                          _____/s/__Jonathan P. Kagan_____
                          Jonathan P. Kagan
                          (D. Md. Bar No. 23181)
                          kagan@kaganstern.com


                          _____/s/__Stephen B. Stern_____
                          Stephen B. Stern
                          (D. Md. Bar No. 25335)
                          stern@kaganstern.com

                          _____/s/__Meagan C. Borgerson_____
                          Meagan C. Borgerson
                          (D. Md. Bar No. 13686)
                          borgerson@ kaganstern.com


                          KAGAN STERN MARINELLO & BEARD, LLC
                          238 West Street
                          Annapolis, Maryland 21401
                          Phone:          (410) 216-7900
                          Facsimile:      (410) 705-0836

                          *Counsel for Plaintiffs Just Puppies, Inc. d/b/a Just
                          Puppies Towson, Just Puppies of Maryland, Inc. d/b/a
                          Just Puppies Rockville, Charm City Puppies, LLC
                          d/b/a Charm City Puppies & Boutique, Today's Pet,
                          Inc. d/b/a Today's Pet, Jodie Hancock d/b/a 2 Mile
                          Kennel, and Sobrad, LLC d/b/a Pinnacle Pet*