**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)**

| | |
|---|---|
| JUST PUPPIES, INC. <br> d/b/a JUST PUPPIES TOWSON, *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> BRIAN E. FROSH, <br> MARYLAND ATTORNEY GENERAL, *et al.* <br><br> Defendants. | * <br> * <br> *    CIVIL NO.: 1:19-cv-2439 <br> * <br> * <br> * <br> * |

\*   \*   \*   \*   \*   \*   \*   \*   \*

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION
## FOR PRELIMINARY INJUNCTION

Plaintiffs, Just Puppies, Inc. d/b/a Just Puppies Towson, Just Puppies of Maryland, Inc. d/b/a Just Puppies Rockville, Charm City Puppies, LLC d/b/a Charm City Puppies & Boutique, Today's Pet, Inc. d/b/a Today's Pet, Sobrad, LLC d/b/a Pinnacle Pet, and Jodie Hancock d/b/a 2 Mile Kennel ("Plaintiffs"), by and through their undersigned counsel, respectfully move for a preliminary injunction, pursuant to Fed. R. Civ. P. 65(b), against Defendants, Brian E. Frosh, in his official capacity as Attorney General for the State of Maryland, the Division of Consumer Protection in the Office of the Attorney General, the Maryland Senate Finance Committee and the Maryland House Economic Matters Committee of the General Assembly of Maryland's (collectively referred to as "the State").

## INTRODUCTION

On January 1, 2020, the Retail Pet Store Plaintiffs, as well as other small retail pet stores similarly situated in the State, will go out of business. On that date, Maryland's Retail Pet Store Ban, dubbed the "No More Puppy-Mill Pups Act," goes into effect. Plaintiff Jodie Hancock's

1

business, which has been in operation for fifteen years and never found in violation of any USDA regulation, will be significantly impacted once the Act goes into effect. Plaintiff Pinnacle Pet's business as a reputable broker in operation for over six years without any violation of any USDA, State of Missouri, or any other State's regulations, will also be substantially impacted once the Act goes into effect. Due to the severe and imminent nature of irreparable harm facing Plaintiffs once the Retail Pet Store Ban goes into effect, Plaintiffs request an expedited, evidentiary hearing on its Motion for Preliminary Injunction.

I.   Background

As alleged in Plaintiffs' Complaint, which Plaintiffs incorporate and adopt in its entirety herein, Plaintiffs challenge Maryland's Pet Store Ban (Section 19-703 of Maryland's Business Regulations Article (banning the sale of dogs and cats by retail pet stores in Maryland effective January 1, 2020) as invalid and unconstitutional under various provisions of the United States Constitution and Maryland's Declaration of Rights. Plaintiffs further challenge Maryland's Pet Store Ban as preempted by 7 U.S.C. § 2133. (Compl., ¶ 13).

On August 23, 2019, Plaintiffs filed a Complaint for Declaratory and Injunctive Relief, challenging the constitutionality of Maryland's Pet Store Ban and alleging that the Act violates the dormant Commerce Clause (Counts I-III), the Equal Protection Clause (Count V), the Maryland Constitution's Anti-Monopoly Clause (Count VI), and that the Act is preempted by the federal Animal Welfare Act ("AWA") (Count IV). Count VII is brought under the Federal Declaratory Judgment Act and Count VIII requests injunctive relief prior to the effective date of the Act (January 1, 2020).

The Maryland State Legislature decided to enact Maryland's Retail Pet Store Ban on April 24, 2018, dubbed the "No More Puppy-Mill Pups Act," becoming one of the first states to pass

such a law.[1]  The Act goes into effect on January 1, 2020.  HB 1662, 2018 Md. Gen. Assemb., 438th Reg. Sess. (Md. 2018). (Compl., ¶¶ 36-37).  The alleged purpose of the "No More Puppy-Mill Pups Act" is to eradicate so-called "puppy mills" by banning Maryland pet stores from selling dogs or cats regulated by and obtained from USDA licensed breeders. (See HB 1662, 2018 Md. Gen. Assemb., 438th Reg. Sess. (Md. 2018)).  (Compl., ¶ 38).  Proponents of the ban argued that USDA standards are insufficient, and that the USDA does not properly oversee or implement its regulations.  Thus, the new Maryland ban was intended to specifically block and/or severely limit USDA licensed breeders from doing business in Maryland by shutting down the retail pet stores who purchase dogs from them.  The majority or USDA licensed breeders and brokers do not sell directly to the public and only sell to retail pet stores. (Compl., ¶ 38).  The other purported State interest for the ban is protecting consumers from purchasing unhealthy animals. The new legislation, however, repeals the strict sourcing and reporting requirements enacted in Maryland in 2016, including the requirement for pet store owners to provide a health certificate from a licensed veterinarian certifying the health of the pet. (Compl., ¶ 39).

The Retail Pet Store Plaintiffs, as well as other small retail pet stores similarly situated in the State, will go out of business once the legislation goes into effect.  (Compl., ¶ 72). Approximately 90-95% of the business of Just Puppies and Charm City Puppies is derived from the sale of dogs (Compl., ¶¶ 47, 57), while approximately one half of the sales from Today's Pet are derived from the sale of dogs and cats (Compl., ¶ 59).  Plaintiff Jodie Hancock, who has been in operation for fifteen years and never found in violation of any USDA regulation, sells dogs exclusively to retail pet stores and her business will be significantly impacted once the Act goes

---

[1] California has passed a similar State law that went into effect at the beginning of 2019.

into effect. (Compl., ¶¶ 51, 55). Plaintiff Pinnacle Pet, a reputable broker with whom Charm City Puppies and Today's Pet obtains its dogs, has been operating as a broker for over six years and has not been found in violation of any USDA, State of Missouri, or any other State's regulations and will also be substantially impacted once the Act goes into effect. (Compl., ¶¶ 62, 63, 66).

Once Maryland's Pet Store Ban takes effect, Maryland residents seeking to purchase purebred and designer puppies will have to rely on unregulated shelters and rescues, the unregulated internet and print advertising to try to locate such dogs. Internet pet sales have a notoriously high incidence of fraud and scams which will only increase against Maryland residents once the ban takes effect. (Compl., ¶¶ 45, 74-77). *See* Better Business Bureau, *2018 BBB Scam Tracker Risk Report*, 14 (2018); Better Business Bureau, *Puppy Scams: How Fake Online Pet Sellers Steal from Unsuspecting Pet Buyers* (September 2017). Local hobby breeders and animal shelters are also unregulated and lack legal oversight that would require them to maintain certain humane standards of care and cleanliness. (*See* Compl., ¶¶ 78-88).

On September 17, 2019, the State filed a Motion to Dismiss for failure to state a claim and on subject-matter jurisdiction grounds. On September 20, 2019, the Humane Society of the United States ("HSUS") moved for leave to file an Amicus Brief in Support of the State's Motion to Dismiss, which was granted on September 23, 2019. On September 17, 2019, the State filed a Motion to Dismiss for failure to state a claim and on subject-matter jurisdiction grounds. Simultaneous to this Motion, Plaintiffs file its Memorandum in Opposition to the Defendants' Motion to Dismiss and Plaintiffs' Response to HSUS' Amicus Brief. Plaintiffs incorporate its Opposition and Response herein.

II.     Standard of Review

Pursuant to Fed. R. Civ. P. 65(b), to obtain a preliminary injunction, moving parties must

establish that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A moving party must satisfy each requirement as articulated. *Real Truth About Obama, Inc. v. Fed Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010). Because a preliminary injunction is "an extraordinary remedy," it "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22; *see also Micro Strategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001)). "All four factors must be shown, and the movant bears the burden on each." *Montgomery v. Hous. Auth. of Balt. City*, 731 F. Supp. 2d 439, 441-42 (D. Md. 2010).

> III. Plaintiffs are likely to prevail on the merits of its claims (Counts I through V) for Violations of Commerce Clause, Federal Preemption, and Violation of Equal Protection Clause; in its claim (Counts VI) for Violation of the Anti-Monopoly Clause; and in its claims (Counts VII through VIII) seeking Declaratory Relief and Injunctive Relief.

In determining whether to grant a motion for preliminary injunction, factors a court considers include "the likelihood of the plaintiff's success on the merits and whether granting the request is in the public interest." *Giant Brands, Inc. v. Giant Eagle, Inc.*, 228 F. Supp. 2d 646, 650 (D. Md. 2002), citing *Airport Comm. of Forsyth Co., N.C. v. CAB*, 296 F.2d 95, 96 (4th Cir. 1961)). "The importance of probability of success increases as the probability of irreparable injury diminishes, and where the latter may be characterized as simply 'possible,' the former can be decisive." *Giant Brands, 228 F. Supp. 2d at 650*. "Even a 'possible' irreparable injury has been held to suffice if there is strong probability of success on the merits." *Id.*

To support Plaintiffs' likelihood of prevailing on the merits, Plaintiffs incorporate and adopt in its entirety herein Plaintiffs' Memorandum in Support of Plaintiffs' Opposition To

Defendants' Motion To Dismiss, and Plaintiffs' Response to HSUS' Memoradum in Support of Defendants' Motion to Dismiss.

Count I of Plaintiffs' Complaint alleges that Maryland's Pet Store Ban facially discriminates against out-of-state breeders and brokers in favor of local, in-state breeders and brokers.  Plaintiffs are able to demonstrate that the clear intent of the Act is to favor "local breeders" in several ways.  First, the Act bans retail pet stores that sell dogs from out of state breeders, thus, eliminating competition from out of state breeders.  Second, it allows "local breeders" to sell directly to the Maryland consumer without any restrictions under the Act.  Third, the Act permits retail pet stores to collaborate with an animal welfare organization or animal control unit to purchase dogs from local breeders. Finally, animal welfare organizations or animal control units have the exclusive monopoly of the retail sale of dogs from "local breeders," thus, eliminating brokers who would typically source dogs from out of state breeders to Maryland.

Count II alleges that the Act violates the Commerce Clause because it is facially discriminatory against in-state retail pet stores.  Plaintiffs are able to demonstrate that the Maryland Pet Store Ban discriminates against in-state pet stores because it cuts off their supply of puppies from traditional, regulated, and legal sources, and forces pet stores to obtain their pets from untraditional, unregulated sources, *i.e.*, animal welfare organizations, local hobby breeders, and the internet.

As an alternative cause of action, Count III alleges that even if it is not proven that the Act is facially discriminatory, it nonetheless creates an excessive incidental burden on interstate commerce that outweighs local benefits. Plaintiffs are able to demonstrate that the burdens on interstate commerce outweigh local benefits, regardless of how widespread the discrimination spans, and so Plaintiffs have successfully stated a claim upon which relief can be granted.

Because Plaintiffs are able to demonstrate that Maryland's Retail Pet Store Ban is discriminatory in any one of the above three ways – on its face, in its effect, or in its purpose, the Court should invalidate the statute unless the State can prove "the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism." *Colon Health Ctrs. of Am.,* LLC, 733 F.3d at 567. If the court accepts as true the factual allegations in the Complaint and reviews the allegations in a light most favorable to Plaintiffs, then Counts I, II and III should survive the State's motion to dismiss.

Count IV of Plaintiffs' Complaint alleges that Maryland's Pet Store Ban is preempted by the federal Animal Welfare Act ("AWA"). A state law is preempted if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[2] *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 492 (1987). "A state law also is preempted if it interferes with the methods by which the federal statute was designed to reach this goal." *Id.* Conflicts that both "that prevent or frustrate the accomplishment of a federal objective and 'conflicts that make it 'impossible' for private parties to comply with both state and federal law. . . are 'nullified' by the Supremacy Clause." *Geir v. Am. Honda Motor Co., Inc.*, 529 U.S. 861 (2000) (quoting *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141 (1982)).

Plaintiffs are able to demonstrate that Maryland's Pet Store Ban does not attempt to promulgate any additional or complimentary standards to those set forth under the AWA; rather, it completely bans the sale of cats and dogs in Maryland from any federally USDA licensed breeder at any retail pet stores. (Compl., ¶ 127). The effect of Maryland's Pet Store Ban is to completely

---

[2] A state law can also be preempted if Congress has expressly defined to what extent a federal statute preempts a state or local law, or when a "pervasive scheme" of federal regulation makes it reasonable to induce that Congress intended to preempt states. *English v. General Elec. Co.*, 496 U.S. 72, 79 (1990). Neither of those prongs apply here.

subvert the standards set forth by the USDA for commercial licensed dog breeders because dogs from such sources will no longer be permitted to be sold within the State. Maryland's Pet Store Ban creates an exception to the Act for local breeders in Maryland which are hobby breeders exempt from USDA regulations. The Act provides that the only acceptable sourcing of dogs and cats is from unregulated sources with no oversight whatsoever. (Compl., ¶ 128).

In Count V, Plaintiffs allege that Maryland's Pet Store Ban violates the Equal Protection Clause of the United States Constitution. The Fourteenth Amendment of the United States Constitution states that no state shall deny any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. 14. The Supreme Court's equal protection jurisprudence has typically revolved around governmental classifications that "affect some groups of citizens differently than others." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (quoting *McGowan v. Maryland*, 366 U.S. 420, 425 (1961)) ("Equal Protection . . . emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable."); *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 60 (1973) (Stewart, J., concurring) ("[T]he basic concern of the Equal Protection Clause is with state legislation whose purpose or effect is to create discrete and objectively identifiable classes")). Preliminarily, although Plaintiffs' claim under the Equal Protection Clause was pled as a separate count, all allegations contained therein were incorporated into and subsumed by Plaintiffs' cause of action for declaratory relief pursuant to 28 U.S.C. § 2201. (*See* Compl., ¶¶ 147-150).[3]

---

[3] To the extent the Court finds Plaintiffs' Equal Protection claim not properly pled, Plaintiffs would move to amend its Complaint to include a cause of action under 42 U.S.C. § 1983. Because Plaintiffs do not seek monetary relief, however, the Court should find that the causes of action in the Complaint as pled are sustainable.

Plaintiffs are able to show that there has been no evidence put forth whatsoever to support the purported interest in reducing "puppy mills" through a ban of sales through retail pet stores. There was no evidence presented during the legislative session showing that Maryland consumers were being defrauded by in-state pet stores, nor was there any evidence provided that showed that retail pet stores in-state were not fulfilling their duty of full disclosure and consumer protections under the existing state law to citizens who purchased puppies from them.  There also was no evidence showing that puppies sold by in-state retail pet establishments were unhealthy or dying after consumer purchases, nor was there evidence that pet store puppies were contributing to shelter populations. (Compl., ¶ 135).

Plaintiffs demonstrate that the Act does nothing to eradicate the ill and broadly-defined "puppy mill industry" and in fact, allows puppies potentially bred in substandard conditions to continue to be sold directly to Maryland consumers without any heightened standards or any consumer recourse.  Upon review of the legislative history, it is clear that retail pet stores have become a politically unpopular group, drawing the ire of the state legislature as well as animal welfare organizations.  (*See, e.g.*, Compl., ¶¶ 132-35; Exh. 1-B at 340, Exh. 1-C at 407).  There is no legitimate government interest in banning retail pet stores from selling dogs and cats to Maryland consumers.  If the Act's actual purpose were to increase animal welfare standards and ensure consumer protections, it would have done so directly and without discriminating against retail pet stores, without any justifiable basis, in the process.

In Count VI, Plaintiffs have stated and supported a claim for relief under Maryland's Anti-Monopoly Article. The Maryland Pet Store ban creates and grants an exclusive right or privilege to sell dogs in Maryland. (Compl., ¶ 88). This right is exclusive because it "prevents [pet stores] from engaging therein, either generally or in a specified place." *See Raney v. County*

9

*Commissioners*, 170 Md. 183, 189 (1936). A complete ban on retail Pet Store pet sales grants an exclusive privilege and power to unregulated breeders, rescues, and animal shelters to sell pets within the state of Maryland. (Compl., ¶ 40).

Plaintiffs are able to demonstrate that the public interest is not protected by the Pet Store ban and thus the monopolistic characteristics of the privilege cannot be excused. *See Levin*, 186 Md. at 183. (*See also* Compl., ¶¶ 74; 77; 80-87; 91). A complete ban on retail Pet Store pet sales grants an exclusive privilege and power to unregulated breeders, rescues, and animal shelters to sell pets within the state of Maryland. (Compl., ¶¶ 88; 91). Thus, the Act fails to protect the public interest in eradicating puppy mills.

In Count VII, Plaintiffs seek Declaratory Judgment and Relief, that the Court will, *inter alia*, declare Maryland's Retail Pet Store Ban to be invalid and unconstitutional. (Compl., ¶ 150). Plaintiffs will likely prevail in their action for declaratory relief from the Court to declare Maryland's Pet Store Ban unconstitutional and invalid, because jurisdiction is proper here and Plaintiffs have been able to show that the Plaintiffs and Defendants are interested parties and an actual, real, and substantial controversy exists regarding the validity and enforceability of Maryland's Retail Pet Store Ban under the United States Constitution and the Maryland Declaration of Rights. (Compl., ¶¶ 148-49).

In Count VIII, Plaintiffs seek preliminary and permanent injunctive relief from the Court to declare Maryland's Pet Store Ban unconstitutional and invalid. (Compl., ¶ 153). Plaintiffs have been able to demonstrate that Maryland's Pet Store Ban will take effect on January 1, 2020, and all Plaintiffs will be severely economically impacted, and Just Puppies, Charm City Puppies, and Today's Pet will go out of business. *Id.* Plaintiffs will suffer irreparable injury upon the Maryland Pet Store Ban taking effect on January 1, 2020. Remedies available at law, such as monetary

damages, are inadequate to compensate Plaintiffs for their injuries. (Compl., ¶ 154). Considering the balance of hardships between the Plaintiffs and the Defendants, a remedy in equity is warranted. *Id.* Lastly, the public interest would not be disserved by a preliminary or permanent injunction. *Id.*

In its Motion to Dismiss, the State contends that the Court does not have subject matter jurisdiction over three of the named Defendants, the Division of Consumer Protection of the Office of the Attorney General (the "Division"), the Maryland State Senate Finance Committee, and the Maryland House Economic Matters Committee (the "Committees"), and therefore, that the lawsuit should be dismissed as to those three defendants. The State does not contend, however, that Defendant Brian E. Frosh, Attorney General of Maryland, is an improper party, and therefore, even if the Court were to conclude that the above-referenced three defendants were improperly named in the suit, all causes of action against Mr. Frosh should survive.

However, Plaintiffs have been able to demonstrate that Maryland's Pet Store Ban imposes excessive, unconstitutional penalties upon Plaintiffs, such that Plaintiffs will be forced out of business (Compl., ¶ 32) and the Division and the Committees are tasked with the enforcement of the Act. This enforcement "is a proceeding without authority of, and does not affect, the State in its sovereign or governmental capacity." *Ex Parte Young*, 209 U.S. 123, 155-56, 142 (1908). Accordingly, the State has "no power to impart immunity from responsibility to the supreme authority of the United States," and the Court's issuance of an injunction to prevent Maryland (in its sovereign or government capacity) from enforcing "an unconstitutional statute is not an interference with [that sovereign's] discretion." *Id.*

Therefore, Plaintiffs will be able to show that the Defendant Committees and Division, tasked with the enforcement of an unconstitutional statute, are proper parties under this declaratory

and injunctive relief action, with unique and legal status under the Maryland Constitution and the Consumer Protection Act. Jurisdiction is proper under *Ex Parte Young* to prevent the State from implementing this unconstitutional statute.

    IV.    <u>Plaintiffs will suffer Irreparable Harm in the absence of Preliminary Relief</u>

Irreparable harm is generally found where the moving party suffers a harm that cannot be compensated by an award of money damages. *See Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir.1994). "When the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied." *Wachovia Ins. Servs., Inc. v. Hinds*, Civ. No. WDQ-07-2114, 2007 U.S. Dist. LEXIS 82103, 2007 WL 6624661, at *3 (D. Md. Aug. 30, 2007) (quoting *Multi—Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir.1994)). Irreparable harm must be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir.1991) (quotation and citation omitted).

Here, Plaintiffs are able to "show that the likelihood of irreparable harm rises above the threshold of mere possibility and is likely to occur if the request is denied." *Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, 700 F. App'x 251, 263 (4th Cir. 2017), citing *Winter*, 555 U.S at 22.

Under the "No More Puppy-Mill Pups Act," all retail pet stores in Maryland will be prohibited from selling cats or dogs. Section 19-703 states:

> (a) Prohibition. -- A retail pet store may not offer for sale or otherwise transfer or dispose of cats or dogs.
>
> (b) Exception. -- This section may not be construed to prohibit a retail pet store from collaborating with an animal welfare organization or animal control unit to offer space for these entities to showcase cats or dogs for adoption.

(Exh. 1 at 13 -- Md. Code Ann., Bus. Reg. § 19-703 (effective January 1, 2020)).

Once Maryland's Pet Store Ban takes effect on January 1, 2020, Just Puppies, Charm City Puppies, and Today's Pet will go out of business due to the ban on the sale of dogs which represents 90 – 95 percent of their revenues. (Compl., ¶ 72). Other retail pet stores that sell dogs and cats to the public are expected to go out of business as well. Maryland residents who work at these stores will lose their jobs. *Id.* Plaintiff Jodie Hancock, who has been in operation for fifteen years and never found in violation of any USDA regulation, sells dogs exclusively to retail pet stores and her business will be significantly impacted once the Act goes into effect. (Compl., ¶¶ 51, 55). Plaintiff Pinnacle Pet, a reputable broker with whom Charm City Puppies and Today's Pet obtains its dogs, has been operating as a broker for over six years and has not been found in violation of any USDA, State of Missouri, or any other State's regulations and will also be substantially impacted once the Act goes into effect. (Compl., ¶¶ 62, 66).

Here, Plaintiffs are easily able to demonstrate the severity of harm facing Plaintiffs once the Maryland Pet Store Ban goes into effect.

V.     The balance of equities tips in Plaintiffs' favor

"Taking into account the irreparable harm that may occur without the injunction and the constitutionality of the injunction's restraints, the balance of equities counsels in favor of the preliminary injunction." *Handsome Brook Farm*, 700 F. App'x at 264.

Plaintiffs are able to demonstrate serious and substantial issues of merit. Once Maryland's Pet Store Ban takes effect on January 1, 2020, Just Puppies, Charm City Puppies, and Today's Pet will go out of business due to the ban on the sale of dogs which represents 90 – 95 percent of their revenues. (Compl., ¶ 72). Other retail pet stores that sell dogs and cats to the public are expected to go out of business as well. Maryland residents who work at these stores will lose their jobs. *Id.*

Plaintiff Jodie Hancock, who has been in operation for fifteen years and never found in violation of any USDA regulation, sells dogs exclusively to retail pet stores and her business will be significantly impacted once the Act goes into effect. (Compl., ¶¶ 51, 55). Plaintiff Pinnacle Pet, a reputable broker with whom Charm City Puppies and Today's Pet obtains its dogs, has been operating as a broker for over six years and has not been found in violation of any USDA, State of Missouri, or any other State's regulations and will also be substantially impacted once the Act goes into effect. (Compl., ¶¶ 62, 66).

If a retail pet store violates the Maryland Pet Store Ban, it is subject to civil fines and penalties for unfair and deceptive trade practices within the meaning of Title 13 of the Commercial Law Article. (Exh. 1 at 0017 -- Md. Code Ann., Bus. Reg. § 19-704). (Compl. ¶ 42).

Once Maryland's Pet Store Ban takes effect on January 1, 2020, Customers and Maryland residents will no longer be able to purchase purebred and designer breed dogs from retail pet stores in Maryland. Unregulated shelters and rescues do not supply purebred and designer breed puppies. Maryland residents will not have safe access to good and reputable licensed commercial breeders and reputable brokers. (Compl., ¶ 73). Maryland residents seeking to purchase purebred and designer puppies will have to rely on unregulated shelters and rescues, the unregulated internet and print advertising to try to locate such dogs. Internet pet sales have a notoriously high incidence of fraud and scams which will only increase against Maryland residents once the ban takes effect. (Compl., ¶ 74).

Plaintiffs are able to demonstrate that Plaintiffs are severely impacted by Maryland's Pet Store Ban, while non-profit animal welfare organizations, shelters, and local breeders are not impacted. The Maryland law still allows "local breeders" and non-profit rescues to collaborate with retail pet stores in Maryland. The law also allows for out-of-state puppies from unregulated

sources to be sold in the State through non-profit rescues and shelters, as well as the internet. (Compl., ¶ 113). Moreover, the legislation creates a monopoly for these "rescue" organizations and continues to allow pets to enter Maryland from breeders and brokers, contrary to the legislation's intent. (Compl., ¶ 88). Plaintiffs can show that the balance of hardships tilts decidedly in Plaintiffs' favor.

VI.     An injunction is in the public interest.

Here, "an injunction is in the public interest." *Montgomery*, 731 F. Supp. 2d at 441. The public interest will be critically affected by permitting the Act to proceed. Current regulations mandate that pet store owners are required to ensure that all breeders and dealers sourcing pets have not received certain citations from the USDA. Md. Code Ann., Bus. Reg. § 19-702.1(b)(2) (subject to repeal effective January 1, 2020). Breeders and dealers could not have received (i) a citation on final inspection within two years of sale of pet, (ii) citations on two or more consecutive final inspections for a repeat noncompliant item within two years of sale of pet, (iii) a citation on the two most recent inspections for a no-access violation, or (iv) three or more citations on the most recent inspection report for any other noncompliant item. *Id.* (Compl., ¶ 31).

Although the federal government did not restrict federally licensed breeders and dealers from selling pets due to USDA citations, Maryland's legislation restricted pet stores from sourcing from breeders and dealers with certain USDA citations and prohibited the sale of pets sourced from unregulated local "hobby" breeders. The 2016 Maryland legislation effectively served as a stricter law to the federal regulations.  All of these 2016 laws are in effect today to safeguard Maryland consumers until Maryland's Pet Store Ban takes effect on January 1, 2020, at which

time Maryland's retail pet stores will go out of business and all such legislative safeguards will be eliminated. (Compl., ¶ 32).

The new legislation repeals the strict sourcing and reporting requirements enacted in Maryland in 2016, including the requirement for pet store owners to provide a health certificate from a licensed veterinarian certifying the health of the pet. (See HB 1662, 2018 Md. Gen. Assemb., 438th Reg. Sess. (Md. 2018)). (Compl., ¶ 39).

Once Maryland's Pet Store Ban takes effect, Maryland residents seeking to purchase purebred and designer puppies will have to rely on unregulated shelters and rescues, the unregulated internet and print advertising to try to locate such dogs. Internet pet sales have a notoriously high incidence of fraud and scams which will only increase against Maryland residents once the ban takes effect. (Compl., ¶ 74). Maryland's Pet Store Ban will significantly hinder the consumers' ability to inspect pets first-hand since they will no longer be able to visit pets in stores for purchase. (Compl., ¶ 77). Maryland residents will not have safe access to good and reputable licensed commercial breeders and reputable brokers. (Compl., ¶ 73).

Non-profit "rescues," such as National Mill Dog Rescue, claim to rescue puppies from "puppy mills," but continue to obtain pets from breeders, brokers, and dog auctioneers.[4] National Mill Dog Rescue, a nonprofit organization, brings in three-million dollars ($3,000,000) per year from "adoption fees" whereby they charge thousands of dollars for certain breeds – just like retail pet stores. *Id.* In July 2019, National Mill Dog Rescue was given a cease and desist order by the Colorado State Board of Veterinary Medicine due to falsified vaccination records and unlicensed

---

[4] Kim Kavin, *When 'Puppy Mill Rescue' Blurs The Line Between Saving And Selling Dogs*, *Huffington Post* (July 14, 2019).

issuance of vaccines to dogs without a veterinarian present.[5] Additionally, as unregulated entities, animal rescue organizations are able to obtain their animals from the very sources the legislation intends to eradicate, including so-called "puppy mills" with substandard welfare conditions. (Compl., ¶¶ 85-86)

Internet pet sales have a notoriously high incidence of fraud and scams which will only increase against Maryland residents once the ban takes effect. (Compl., ¶¶ 45, 74-77). *See* Better Business Bureau, *2018 BBB Scam Tracker Risk Report*, 14 (2018); Better Business Bureau, *Puppy Scams: How Fake Online Pet Sellers Steal from Unsuspecting Pet Buyers* (September 2017). Local hobby breeders and animal shelters are also unregulated and lack legal oversight that would require them to maintain certain humane standards of care and cleanliness. (*See* Compl., ¶¶ 78-88).

VII. Conclusion

Plaintiffs are likely to prevail on the merits of its claims. Plaintiffs are "likely to suffer irreparable harm absent preliminary relief," that "the balance of equities tips in its favor," and that "an injunction is in the public interest." *Montgomery*, 731 F. Supp. 2d at 441. Plaintiffs request an expedited, evidentiary hearing, whereby Plaintiff will submit evidence supporting all facts set forth in the Complaint and Memoranda. For these reasons, the Court should grant Plaintiffs' Motion for Preliminary Injunctive Relief.

Respectfully submitted,

/s/ *Jonathan P. Kagan*
Jonathan P. Kagan
(D. Md. Bar No. 23181)

---

[5] Chase Golightly, *National Mill Dog Rescue in Peyton Receives Cease and Desist Order from State Board*, KRDO (July 19, 2019).

kagan@kaganstern.com

_/s/ Stephen B. Stern_
Stephen B. Stern
(D. Md. Bar No. 25335)
stern@kaganstern.com

_/s/ Meagan C. Borgerson_
Meagan C. Borgerson
(D. Md. Bar No. 13686)
borgerson@ kaganstern.com

KAGAN STERN MARINELLO & BEARD, LLC
238 West Street
Annapolis, Maryland 21401
Phone:      (410) 216-7900
Facsimile:  (410) 705-0836

*Counsel for Plaintiffs Just Puppies, Inc. d/b/a Just Puppies Towson, Just Puppies of Maryland, Inc. d/b/a Just Puppies Rockville, Charm City Puppies, LLC d/b/a Charm City Puppies & Boutique, Today' s Pet, Inc. d/b/a Today' s Pet, Jodie Hancock d/b/a 2 Mile Kennel, and Sobrad, LLC d/b/a Pinnacle Pet*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 23rd day of October, 2019, a copy of the foregoing was served electronically by the CM/ECF system on all persons entitled to service.

_/s/ Jonathan P. Kagan_
Jonathan P. Kagan